780 F.2d 1020
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, Plaintiff-Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellee.
 84-5887
 United States Court of Appeals, Sixth Circuit.
 11/26/85
 
 VACATED AND REMANDED
 E.D.Tenn.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: JONES and CONTIE, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The plaintiff, Knox Federal Savings & Loan Association (Knox Federal),[1] brought this action against the Federal Deposit Insurance Corporation (FDIC) pursuant to 12 U.S.C. Sec. 1819.[2] The lawsuit sought to force the FDIC in its corporate capacity (FDIC/corporate) to repurchase the plaintiff's interest in a loan made to the Chattanooga Computer Center (Computer Center) by the United American Bank of Knoxville (UAB), a bank for which the FDIC subsequently was appointed receiver (FDIC/receiver.) The plaintiff's claim of entitlement to payment by FDIC/corporate rests on a Memorandum of Understanding, which the plaintiff alleges transferred the obligation to make such a repurchase from FDIC/receiver to FDIC/corporate. Finding that the document in question unambiguously transferred no such obligation, the magistrate entered summary judgment for FDIC/corporate. Because we conclude that the Memorandum of Understanding is ambiguous, we reverse and remand for the taking of evidence on the parties' intent.
 
 I.
 
 2
 The plaintiff Knox Federal is a creditor of UAB under the terms of a Loan Participation Agreement dated October 8, 1982. UAB defaulted on its alleged obligation to repay Knox Federal's $2.5 million share of UAB's $20 million loan to Computer Center on December 27, 1982.[3] Shortly thereafter, the Tennessee Commissioner of Banking placed UAB into liquidation,[4] and appointed the FDIC as its receiver.
 
 
 3
 Once its appointment was accepted, FDIC, in both its capacities, entered into a Purchase and Assumption Agreement with First Tennessee Bank (FTB).[5] Pursuant to this Agreement, FTB received UAB's book assets and assumed its book liabilities.[6] FDIC/corporate agreed to reimburse FTB for any reduction in the book value of any asset transferred to it, and to indemnify FTB against adverse judgments.
 
 
 4
 Subsequently, the parties modified the Purchase and Assumption Agreement with a Memorandum of Understanding.[7] It is disagreement over the meaning of this document that gives rise to the instant suit.
 
 II.
 
 5
 The sole issue presented by this appeal is whether the magistrate erred in concluding that the Memorandum of Understanding unambiguously transferred to FDIC/corporate only the assets of the receivership, leaving FDIC/receiver saddled with any repurchase obligations. Because the magistrate rested his decision on construction of the two agreements, we likewise limit our review to the four corners of those documents. Our decision calls only for contract interpretation, and therefore we are not restricted by the clear error rule. Policy v. Powell Pressed Steel Co., 770 F.2d 609, 612 (6th Cir. 1985). In this case, reversal is required because the phrase 'any and all legal interest in said loans,' as used in subsection 1(c) of the Memorandum of Understanding, might reasonably be found to transfer repurchase obligations to FDIC/corporate.
 
 
 6
 The Memorandum of Understanding expressed its purpose as 'clarifying and where necessary modifying the Agreement.' App. 32. Knox Federal argues that one of the main purposes of the Memorandum was to set out clearly the rights and obligations of the parties with respect to loans in which participations had been sold. This seems to be true. Paragraph one of the Memorandum specifically provides that FTB assumed no liability to participants with respect to such loans. This paragraph also makes clear that the Purchase and Assumption Agreement transferred to FTB 'only a financial interest in loans' that were the subject of participations. The term 'financial interest' apparently identifies that part of such loans that had not been 'participated out,' and therefore was owned by UAB at the time of its closure. Thus, argues Knox Federal, under paragraph one of the Memorandum, these loans in which participations had been sold were jointly owned by FTB and those like Knox Federal who had bought participations.
 
 
 7
 According to Knox Federal then, the effect of the Memorandum of Understanding was to leave FDIC/receiver with no ownership interest in loans in which participations had been sold. The participating banks, like Knox Federal, owned that portion of the loans they had bought, and the remaining portion was transferred to FTB under the 'financial interest' language of the two documents. The only 'legal interest' left to be retained by FDIC/receiver, by virtue of paragraph one of the Memorandum, was the obligation, if any, to those who had purchased participations. Finally, Knox Federal argues that where subsection 1(c) of the Memorandum provides that '[t]he receiver shall assign, sell, and convey to FDIC [corporate] any and all legal interest in said loans,' the 'legal interest' there identified was the same legal interest defined earlier in paragraph one. Knox Federal therefore concludes that subsection 1(c) must have been intended to transfer to FDIC/corporate UAB's liabilities to those, like Knox Federal, who had bought loan participations.
 
 
 8
 In response, FDIC/corporate argues that under a proper interpretation of paragraph one, the 'legal interest' retained by FDIC/receiver was ownership of the chose-in-action created by the note of Computer Center to UAB, at least to the extent that the loan had not been 'participated out'. FDIC/corporate thus concludes that it was the legal interest in the chose-in-action created by the loan to Computer Center--not the liabilities associated with loan participations--that was transferred to FDIC/corporate in subsection 1(c). In support of this argument, FDIC/corporate points out that the language of subsection 1(c), providing that '[t]he Receiver shall assign, sell and convey to FDIC [corporate] any and all legal interest in said loans . . .', ordinarily signifies an assignment of rights, not an assumption of liabilities.
 
 
 9
 It appears to us that, even if it be assumed that FDIC/corporate has the better of the argument as to the proper interpretation of the Memorandum viewed within its four corners, the language is not so clear that it could be held to be unambiguous.[8] Since the true intent of the contracting parties may not be clearly divined from the document on its face, the magistrate erred in failing to consider extrinsic evidence of such intent. We therefore must remand for the consideration of such evidence.
 
 
 10
 For completeness, we note that the court below appeared to find that the 'loans or portions thereof that had been participated out by UAB prior to closing, were not on its books when it closed and hence were not acquired by First Tennessee as assets of UAB.' Slip op. at 5. In view of this language, it may be that the court below in part based its conclusion on the proposition that the loans in which participations had been sold, including Knox Federal's, were not a subject of the Memorandum of Understanding, since the Purchase and Assumption Agreement provides that FTB would acquire only assets and liabilities 'reflected on the books' of UAB. However, the Memorandum specifically deals with loans that were the subject of participations. Memorandum of Understanding, p1. Nothing express in the Memorandum makes clear that the document was not intended to speak broadly, precisely to make emphatic FTB's exemption from any liability that might be connected with loans that had been participated out. Therefore, the Memorandum at the least is ambiguous as to whether it intends to deal with loan participations not on UAB's books. Since this possible alternative ground for the magistrate's ruling likewise rests on ambiguous language, it still requires us to remand.
 
 
 11
 It will be for the court below to determine whether evidence with respect to FDIC/corporate's board of directors' discussion of Knox Federal's claim, and the board's decision to pay a claim of another participant in the Computer Center loan are admissible as evidence of the intent of the parties to the Memorandum and in particular as evidence of a practical construction of the Memorandum by FDIC/corporate.[9] We mention this because the opinion below and Knox Federal's brief both indicate that Knox Federal will seek to rely on such evidence. Slip op. at 5.
 
 
 12
 It will also be for the court below, in the event that it construes that part of the Memorandum that was at issue there and here in accordance with the contention of Knox Federal, to determine what effect, if any, to give to paragraph 13.4 of the Purchase and Assumption Agreement, which has to do with limiting the rights of nonparties to rely on the provisions thereof.[10]
 
 III.
 
 13
 We hold that the magistrate erred in concluding that the Memorandum of Understanding unambiguously transferred from FDIC/receiver to FDIC/corporate only the 'legal interest' in the assets of the receivership, reserving to FDIC/receiver any and all liability connected with repurchase obligations. We find as a matter of law that the document contains patent ambiguity on the issues of what 'legal interest' in which of the 'said loans' was transferred. Because these ambiguities prevent discernment of the intent of the parties with regard only to the four corners of the two documents, the summary judgment in favor of FDIC/corporate is Vacated and the case Remanded for trial, at which the parties may present parol or other extrinsic evidence to prove the intent underlying the disputed language.
 
 
 
 [1]
 This action originally was brought by Knox Federal. See, Knox Federal Savings and Loan Association v. Federal Deposit Insurance Corporation, No. CIV-3-83-656 (E.D. Tenn. Aug. 28, 1984). Knox Federal has since been placed into receivership, and the motion of the Receiver, Federal Savings and Loan Insurance Corporation (FSLIC/receiver), to substitute parties was granted by order of this court on August 29, 1985. Accordingly, the action is now titled as captioned above. For purposes of clarity, however, the opinion continues to refer to Knox Federal, the bank that brought the action, as plaintiff-appellant
 
 
 [2]
 Section 1819 creates federal question jurisdiction over all suits by and against the FDIC. '[T]he Corporation [FDIC] . . . shall have power--. . . [t]o sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States . . ..' 12 U.S.C.A. Sec. 1819 (1980)
 
 
 [3]
 FDIC contests even the liability of FDIC/receiver to repurchase the $2.5 million loan participation from Knox Federal. This issue was not considered below, because the magistrate decided that even if such an obligation existed, Knox Federal was not entitled to recover. Therefore, the question is not before us, and we express no opinion about its answer. On remand, should the magistrate determine that the parties intended to transfer repurchase obligations to FDIC/corporate, he would then be obliged to consider whether the Knox Federal participation imposed any repurchase obligation on FDIC/receiver
 
 
 [4]
 Pursuant to Tenn. Code Ann. Sec. 45-2-1502(b)(2), 1504 (1985) (Sec. 1502 amended 1980)
 
 
 [5]
 The FDIC has two methods of accomplishing its duty to pay the depositors of a failed bank: liquidation, or a purchase and assumption transaction, the method employed in the instant case. See FDIC v. Leach, Nos. 82-1003/1034/1084, slip op. at 3-4 (6th Cir. Sept. 11, 1985); Gunter v. Hutcheson, 674 F.2d 862, 865 (11th Cir.), cert. denied 459 U.S. 826 (1982); Gilman v. FDIC, 660 F.2d 688, 690 (6th Cir. 1981). Liquidation, whereby the assets of the bank are liquidated and depositors are paid their insured amounts, is the simplest method, but this option suffers the disadvantages of destroying public confidence in the banking system, disrupting the banking system's financial machinery, and causing depositors to wait long periods to recover even the insured portion of their funds. Purchase and assumption transactions, therefore, are more frequently employed when a bank such as UAB fails
 In a purchase and assumption transaction, the FDIC arranges for a financially stable bank to 'purchase' the failed bank from the receiver and reopen it without interrupting banking operations and without loss to depositors. The transaction obviously must be consummated with great speed. For example, the transaction at issue occurred overnight. In the typical purchase and assumption transaction, as here, the FDIC acts in two separate capacities: as receiver and as corporate insurer. See FDIC v. Ashley, 585 F.2d 157, 160 (6th Cir. 1978).
 
 
 [6]
 The pertinent section provides:
 Assuming Bank [FTB] hereby expressly assumes and agrees to pay, perform, and discharge all liabilities of the Bank [UAB] except those which are not reflected on the Bank's books as of Bank closing, are contingent or represent subordinate debt of the Bank.
 Purchase and Assumption Agreement p2.1. Paragraph 3.1 extends essentially the same treatment to UAB's assets. Paragraph 14 of the Memorandum of Understanding defines book assets and liabilities as 'assets and liabilities of the Bank [UAB] as and to the extent that they were reflected on the general ledger of the Bank.'
 
 
 [7]
 This document provides, in pertinent part:
 
 
 [1]
 Loans Participated or Sold by Bank--Assuming Bank [FTB] assumes no liability for loan participations sold by the Bank [UAB] or loans sold under repurchase agreements by the Bank. It is expressly understood that the Agreement transfers to the Assuming Bank only a financial interest in loans the subject of participations sold and loans sold under repurchase agreements, and that the receiver retains all legal interest in said loans
 * * *
 a. Assuming Bank shall receive a financial interest in said loans of the Bank equal to that amount not participated or sold by the Bank. Such financial interest shall include the right to receive a pro rata share of the interest due or to become due on such loans.
 * * *
 b. Assuming Bank shall deliver to the Receiver any and all loan documents and collateral securing any and all loans which are the subject of loan participations or loans sold under repurchase agreements . . .
 * * *
 c. The Receiver [FDIC/receiver] shall assign, sell, and convey to FDIC [corporate] any and all legal interest in said loans in consideration for the FDIC guarantee against loss as set forth in the Agreement, subject to the terms and conditions established by the Receiver.
 
 
 [8]
 As support for his conclusion that the documents were not ambiguous, the magistrate cited a recent Sixth Circuit decision. In re F&T Contractors, Inc., 718 F.2d 171 (6th Cir. 1983). The court there held that 'the FDIC-corporation is entitled to rely on the bank's records with respect to assets and liabilities when it enters into an agreement to purchase assets from such bank.' 718 F.2d at 182 (citation omitted). The magistrate may have read this language to mean that any asset or liability not on UAB's books at the time it closed could not be among the assets or liabilities transferred to FDIC/corporate by the two documents in this case. Slip op. at 5. However, we deal here with a different set of documents than were at issue in F&T Contractors, including a Memorandum of Understanding aimed specifically at clarifying liabilities associated with loan participations. Likewise, the F&T Contractors decision that the words 'legal interest' may identify liabilities certainly does not establish that those words always refer to liabilities, as argued by Knox Federal. Because the facts and documents differ from those at issue here, the holding of F&T Contractors does not affect our decision
 
 
 [9]
 The court below must consider the preclusive effect, if any, of Fed. R. Evid. 408, which makes inadmissible evidence of settlement or compromise of a claim on the issue of the settling party's liability for that claim
 
 
 [10]
 The FDIC argues that because Knox Federal was not a party to the Memorandum of Understanding, Knox Federal lacks 'standing' to prove the intent of the FDIC and FTB. We believe that FDIC/corporate incorrectly characterizes the question as one of 'standing.' The question would be, assuming that under the Memorandum, FDIC/corporate intended, as between the parties, to assume the liability of FDIC/receiver to Knox Federal, whether the parties also intended thereby to benefit a third party, such as Knox Federal